**Johnny REYNOLDS, et al., Plaintiffs,**

v.

**ALABAMA DEPARTMENT OF TRANSPORTATION, et al., Defendants.**

**No. CIV.A. 85–T–665–N.**

United States District Court, M.D. Alabama, Northern Division.

Jan. 31, 2000.

Robert L. Wiggins, Jr., Ann K. Wiggins, Russell W. Adams, Abigail P. van Alstyne, Kimberly C. Page, Scott Gilliland, and Kell A. Simon, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Johnny Reynolds, plaintiff, and Cecil Parker, Frank Reed, Ouida Maxwell, Martha Ann Boleware, Florence Belser, Peggy Vonsherie Allen, and Jeffrey W. Brown, intervenor-plaintiffs.

Claudia H. Pearson, Nakamura & Quinn, Birmingham, AL, for Robert Johnson, intervenor-plaintiff.

Raymond P. Fitzpatrick, Jr., R. Scott Clark, J. Michael Cooper, Fitzpatrick, Cooper & Clark, Birmingham, AL, for William Adams, Cheryl Caine, Tim Colquitt, William Flowers, Wilson Folmar, George Kyser, Becky Pollard, Ronnie Pouncey, Terry Robinson, Tim Williams, intervenors.

Raymond P. Fitzpatrick, Jr., R. Scott Clark, J. Michael Cooper, Fitzpatrick, Cooper & Clark, Birmingham, AL, for Michael Grant, John D'Arville, and Andrew McCullough, intervenors.

Lisa W. Borden, Birmingham, AL, and William H. Pryor, Jr., Attorney General for the State of Alabama, Montgomery, AL, for Alabama Department of Transportation, Alabama State Personnel Department, the Director for the Alabama Department of Transportation, the Director of the Alabama State Personnel Department, and the Governor of the State of Alabama, defendants.

Elaine R. Jones, Norman J. Chachkin, NAACP Legal Defense Fund, New York, NY, for NAACP Legal Defense and Educational Fund, Inc., amicus.

Barbara R. Arnwine, Thomas J. Henderson, Richard T. Seymour, Teresa A. Ferrante, Lawyers' Committee for Civil Rights Under Law, Washington, DC, for The Lawyers' Committee for Civil Rights under Law, amicus.

ORDER OF CIVIL CONTEMPT AGAINST THE ALABAMA DEPARTMENT OF TRANSPORTATION AND THE ALABAMA STATE PERSONNEL DEPARTMENT

MYRON H. THOMPSON, District Judge.

In 1994, this longstanding lawsuit—in which the plaintiffs (who represent African–American employees and applicants) charged the defendants (the Alabama Department of Transportation, the Alabama State Personnel Department, and their officials) with racial discrimination in employment and in which the Adams intervenors (who represent non-black employees) were allowed restricted intervention—resulted in a partial consent decree (consent decree I) settling what all parties agreed were race-neutral class-wide issues.[1] This

---

1. *See Reynolds v. Alabama Dep't of Transp.*, 1994 WL 899259 (M.D.Ala. Mar.16, 1994)

(Doc. no. 553).

litigation is again before the court, this time on the following three motions: (1) the plaintiffs' motion for civil contempt, filed February 13, 1997;[2] (2) the plaintiffs' motion for further relief, filed February 13, 1997;[3] and (3) the Adams intervenors' motion for contempt enforcement through race-neutral means, filed September 20, 1999.[4] The court also has before it two other important filings: (1) the defendants' stipulation to noncompliance with consent decree I, filed August 13, 1999;[5] and (2) the parties' agreement to remedies for contempt, filed December 17, 1999.[6] As will be explained below, the court now finds that the defendants are in civil contempt of consent decree I and, with this finding, fashions appropriate relief.

## I.

### THE PLAINTIFFS' MOTIONS FOR CIVIL CONTEMPT AND FOR FURTHER RELIEF

(1) After the plaintiffs filed their February 1997 motions for civil contempt and for further relief, the defendants were ordered to show cause why the motions should not be granted,[7] and the defendants responded on March 7, 1997.[8]

(2) After substantial discovery in the period from March to July 1997, the plaintiffs' motions were tried to the court for seven days, from July 7 to 14, 1997, before being taken under submission.

2. Doc. no. 1542.

3. Doc. no. 1543.

4. Doc. no. 4167.

5. Doc. no. 4147.

6. Doc. no. 4247.

7. *See* order entered February 18, 1997 (Doc. no. 1552).

8. Doc. no. 1631. Initially, there was some confusion over whether the Personnel Department was charged with civil contempt in the plaintiffs' 1977 motions. By order entered on June 24, 1997 (Doc. no.1952), the court held that the department was charged in the motions.

9. Doc. no. 2624.

(3) During 1998, additional evidence addressing the defendants' contempt on related aspects of consent decree I was heard on the plaintiffs' second and third civil contempt motions, which had been filed on April 30, 1998,[9] and June 16, 1998,[10] resulting in the civil-contempt order of July 8, 1998, *Reynolds v. Alabama Department of Transportation,* 10 F.Supp.2d 1263 (M.D.Ala.1998),[11] and the court's order of September 23, 1998.[12]

(4) Concerned that the evidence developed at the hearings on the plaintiffs' January 1997 motions needed to be updated, the court ordered a supplemental evidentiary hearing for March 2, 1999.[13]

### THE DEFENDANTS' STIPULATION OF NON–COMPLIANCE AND THE ADAMS INTERVENORS' MOTION FOR CONTEMPT

(5) Further discovery and exchange of information eventually resulted in the defendants stipulating to certain facts and to non-compliance with consent decree I on August 13, 1999.[14] The plaintiffs and defendants also represented that still further stipulations or, in their absence, further evidence would be forthcoming prior to or during the supplemental evidentiary hearing on the plaintiffs' motion for contempt.

(6) The Adams intervenors subsequently filed a motion to hold the defendants in contempt of several discrete provisions of

10. Doc. no. 2825.

11. Doc. no. 2954.

12. Doc. no. 3163.

13. *See* order entered December 14, 1998 (Doc. no. 3379).

14. Doc. no. 4147. In this order, the court has attempted to summarize the defendants' stipulation. To the extent the court's summary of the stipulation differs from the stipulation itself, the language of the stipulation still controls in this litigation.

four articles of consent decree I: article II, ¶ 2(a-b), article III, ¶ 4(a-b), article IV, and article XV, ¶ 1 and ¶ 3(d).[15] The court issued a show-cause order on September 24, 1999,[16] to which the defendants filed their response on October 1, 1999,[17] and the plaintiffs filed a response that same day.[18]

(7) After its original setting on March 2, 1999, the court reset the supplemental evidentiary hearing on the issue of the defendants' contempt on a number of occasions based on the plaintiffs' and defendants' representations that they were preparing stipulations that would update the evidentiary record, in whole or in part, without need of any additional evidentiary hearing.

## THE PARTIES' AGREEMENT FOR REMEDIES OF CONTEMPT

### Opening Provisions

(8) On December 17, 1999, the plaintiffs, the defendants, and the Adams intervenors submitted an agreement on remedies for contempt.[19] The parties agree that the defendants should be held in civil contempt of court for non-compliance with consent decree I and the court's orders and injunctions related to its enforcement until such time as they have affirmatively demonstrated that they have achieved full compliance with such decree, orders, and injunctions.

(9) The remedies agreement addresses and resolves the defendants' non-compliance with and contempt of consent decree I and orders and injunctions enforcing the decree. In other words, the specific allegations of contempt asserted by both the plaintiffs and the Adams intervenors are resolved except as expressly otherwise set forth in the agreement. The remedies agreement also addresses and resolves the issue of what coercive remedies and sanctions are appropriate for such non-compliance; however, it does not resolve any other remedial issues regarding the defendants' contempt or the pending motions, including, but not limited to, compensatory relief.

(10) The parties agree that because the decree was entered under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C.A. §§ 1981a, 2000e through 2000e–17), the Civil Rights Act of 1866, as amended (42 U.S.C.A. § 1981), and the fourteenth amendment to the United States Constitution as enforced through Civil Rights Act of 1871, as amended (42 U.S.C.A. § 1983), this court is authorized under 28 U.S.C.A. § 1331, 42 U.S.C.A. § 1343, and Title VII to enter the relief necessary to coerce compliance and compensate for injuries caused by non-compliance, and venue is proper in this court.

(11) Pursuant to the remedies agreement, the defendants must, by certain dates, demonstrate full compliance with each article of consent decree I. The parties agree that certain agreed-upon coercive sanctions are to begin automatically on the date provided in the absence of a stipulation or order of the court establishing the defendants' full compliance.

(12) Under the remedies agreement, nothing in it extends or should be construed to extend the time for complying with consent decree I or any orders or injunctions relating to the decree; nothing in the agreement should be construed to modify, alter, or amend the terms of con-

---

15. *See* motion for contempt enforcement through race-neutral means, filed September 20, 1999 (Doc. no. 4167).

16. Doc. no. 4177.

17. Doc. no. 4189.

18. Doc. no. 4190.

19. Doc. no. 4247. In this order, the court has recited from and attempted to summarize the remedies agreement. To the extent the court's view of the agreement differs from the agreement itself, the language of the agreement still controls in this litigation; and the fact that a provision or reservation in the remedies agreement is not mentioned in this order does not mean that the provision and reservation are not still operative, or, to put it another way, the provision and reservation are still operative.

sent decree I or any other order or injunction previously entered by the court; and nothing in the agreement excuses or should be construed to excuse full compliance with consent decree I or any other order or injunction.

(13) The plaintiffs and the defendants stipulated that the defendants have not yet fully complied with consent decree I, and they consent to entry of an order finding the defendants in contempt of the decree on the basis of the stipulations of non-compliance and fact filed August 13, 1999 (in particular, the defendants' admissions as set forth in stipulations 1–6, 19–23, 30–36, 39–40, 75–78, 90–94, 96–97, 179–181), the court's prior orders, findings and declaratory judgments regarding compliance, or lack thereof, with consent decree I, the evidence presented at trials and hearings in this case since the effective date of consent decree I, and the record of the case as a whole at any time since the effective date of consent decree I. The Adams intervenors do not join in the plaintiffs and defendants' stipulations, and they decline to join in the plaintiffs' and defendants' agreement concerning this evidentiary basis. They also do not waive their contention that those remedies not set forth in the remedies agreement and which affect the employment interests of the intervenor class can only be entered upon consent or following full evidentiary proceedings.

*Extension of Consent Decree I*

(14) The plaintiffs and defendants agree that the term of consent decree I, in its entirety, should be extended until December 31, 2004. The plaintiffs and defendants further agree that the provisions of consent decree I affecting the recruitment and selection requirements of the decree—specifically article I, article III (¶¶ 2, 3, and 12), articles VI through X, article XI (¶¶ 11 and 21), article XIII (¶¶ 1(a) and (c), 2, 3(d), and 11), article XIV, and article XIX, (¶¶ 1–5, 6(a-d), and 7)—should be extended until December 31, 2006, with the special affirmative action training of article XVI, ¶ 1, to be repeated in 2002 and 2004. The plaintiffs and the defendants further agree that, prior to expiration of the term provided, the parties may seek further extension of any provision for which the defendants are not in full compliance. Notwithstanding the foregoing provision, the plaintiffs also retain the right to seek extension of the duration of all or part of the consent decree I pursuant to the provisions of article 19, ¶ 10 of the decree. The plaintiffs also reserve the right to seek to restore the full amount of time that each provision of consent decree I was intended to operate after the initial compliance as a remedy for the defendants' contempt. The defendants reserve the right to oppose any such further extension.

(15) The Adams intervenors object to the foregoing extensions of consent decree I. The intervenors encourage in alternative that this court extend the decree for a period of only two years, to expire on December 31, 2002. In a hearing held December 21, 1999, the intervenors conceded that it was unlikely that the defendants would be able to achieve full compliance with all terms of consent decree I by that date; they suggested that this court should at that time simply extend the decree for another small discrete term, then extend that term again if necessary, and so on.

(16) Based on the evidence presented so far in this litigation, the court rejects the Adams intervenors' proposed alternative and concludes, instead and independently, that the decree should be extended as suggested by the plaintiffs and the defendants.[20] This court has repeatedly made clear that "[a] court's end purpose in institutional litigation, such as

---

**20.** By the word independent, the court means that it has viewed the plaintiffs and the defendants' stipulation for extension as merely a suggestion rather than a stipulation, and the court has therefore reached its own conclusion for extension based on the evidence presented.

this, is to remedy the violation and then to restore to local or state authorities complete control of the institution operating in compliance with federal law." *Sims v. Montgomery County Comm'n,* 890 F.Supp. 1520, 1534–35 (M.D.Ala.1995) (Thompson, J.) (citing *Missouri v. Jenkins,* 515 U.S. 70, 97–98, 115 S.Ct. 2038, 2054, 132 L.Ed.2d 63 (1995); *Freeman v. Pitts,* 503 U.S. 467, 489, 112 S.Ct. 1430, 1445, 118 L.Ed.2d 108 (1992)), *aff'd,* 119 F.3d 9 (11th Cir.1997) (table). To set an unrealistic date for compliance and for the termination of litigation would not only be meaningless, it would trivialize the concept of a compliance date, with the result that there would, in effect, be no real compliance date. The court believes instead that it should set a realistic date for compliance, with the defendants expected to meet that date—no ifs, ands, or buts allowed. Both the plaintiffs and the defendants are entitled to certainty; they should not have to waste their time and resources on unnecessary litigation over deadlines that cannot be met. Moreover, one of the principal ways that a defendant subject to longstanding court supervision may prove its entitlement to release is by establishing an evidentiary record of compliance with court orders for a period of time. *See Freeman v. Pitts,* 503 U.S. at 491, 112 S.Ct. at 1446 (stating that courts, in deciding whether to release a school system from its supervision, "should give particular attention to the school system's record of compliance" because that school system "is better positioned to demonstrate its good-faith commitment to a constitutional course of action when its policies form a consistent pattern of lawful conduct directed to eliminating earlier violations.") It would therefore be against such defendant's interest for the court to set a compliance deadline that everyone knows cannot be met, for the court would, in effect, be setting the defendant up for defeat and thereby saddling the defendant with an evidentiary record of non-compliance.

*Coercive Sanctions for Contempt*

(17) The defendants agree to demonstrate affirmatively their full compliance with each provision of consent decree I by the deadlines agreed upon by the parties. If such affirmative demonstration, as confirmed by either a stipulation of the parties or order of the court, has not occurred prior to the deadlines for automatic sanctions agreed upon, then the following sanctions will commence on each such deadline and continue until such time as the court determines that the defendants have achieved full compliance with the subject article of consent decree I and related orders and injunctions. As to each article for which one of the deadlines has not been met, the following sanctions apply:

(a) On the first day following the expiration of the deadline date, and on each subsequent day until full compliance is stipulated by the parties or found to have been achieved by the court, defendants are to pay the sum of $ 500.

(b) Should the defendants' non-compliance continue for more than 30 days following the deadline date, beginning on the 31st day, and on each subsequent day until full compliance is stipulated by the parties or found to have been achieved by the court, the defendants are to pay the sum of $ 1,000.

(c) Should the defendants' non-compliance continue for more than 60 days following the deadline date, beginning on the 61st first day, and on each subsequent day until full compliance is stipulated by the parties or found to have been achieved by the court, the defendants are to pay the sum of $ 1,500.

(d) Should the defendants' non-compliance continue for more than 90 days following the deadline date, the plaintiffs should notify the court, and the court is to set an emergency hearing to determine appropriate additional sanctions and remedies for continued non-compliance on an expedited basis.

(e) These sanctions apply, separately and severally, to each article of consent decree I.

(f) If the plaintiffs or the Adams intervenors believe at any time during the period prior to any deadline for fines to commence that the defendants are not making sufficient progress towards achieving full compliance with any provision of consent decree I, they may petition the court to enter such sanctions as are necessary to coerce such progress or compliance, including, but not limited to, commencing payment of the agreed-upon fines set forth above prior to the deadlines established below, and the court will treat such petition as an emergency motion by causing its hearing and determination to be expedited.

(g) The foregoing sums should be paid into the registry of the Court on a weekly basis.

(h) The defendants are required to comply with the deadlines and must affirmatively demonstrate such compliance in order to avoid payment of the sanctions set forth above.

## Mediation

(18) The parties agree that, prior to the arrival of any deadline, if the defendants believe they have complied with the required actions, the defendants should timely solicit agreement from the plaintiffs and the Adams intervenors that the defendants are in compliance, in sufficient time prior to such deadline to allow the plaintiffs and the intervenors a reasonable opportunity to review the defendants' report and determine whether the proposed stipulation should be entered. The solicitation of a stipulation should include a detailed report demonstrating full compliance with appropriate documentation.

(19) If the plaintiffs and the Adams intervenors agree that the defendants have achieved compliance, the parties should so stipulate and the stipulation should be filed with the court on or before the deadline date.

(20) If the parties dispute whether the defendants have achieved compliance, the matter in dispute should be submitted to the court-appointed monitor for mediation on an expedited basis in sufficient time before the deadline for the sanctions to commence by the deadline date. Before exercising their right to seek early imposition of sanctions, the plaintiffs and the Adams intervenors must notify the defendants of the alleged deficiency and submit the matter in dispute to the monitor for mediation.

(21) If the defendants are unable to obtain a stipulation of compliance from the other parties by the deadline date, the defendants must begin automatic payment of daily monetary sanctions until relieved therefrom by an order of the court that they have in fact fully complied with the subject provision of consent decree I. If the defendants file a motion before the commencement of any such fine contending that they were in full compliance by the deadline date, and the court determines that the defendants were in compliance on the date such fines commenced as alleged in the motion, the court must enter an order refunding to the defendants any fines paid since the deadline date.

(22) The plaintiffs and intervenors should not unreasonably withhold stipulation of compliance and will promptly provide the defendants with a written statement specifically identifying in what respects the plaintiffs and/or intervenors contend the defendants have not complied with the subject provision of consent decree I within 15 business days after being served with the defendants' report of compliance.

(23) If the defendants acknowledge that they are not in compliance with any provisions of consent decree I by the appropriate specified deadlines, they should notify all parties and file a Notice of Non–Compliance with the court not later than the specified deadline for daily monetary sanctions to begin.

*Non-coercive Remedies and Sanctions*

(24) The remedies agreement does not resolve issues concerning what non-coercive remedies or compensation, if any, should be awarded to redress or undo the effects of the defendants' non-compliance and contempt. Such remedies must be determined by further agreement of the parties or order of the court after hearings thereon. The parties agree to submit briefs on the issues necessary to resolve the remedies under this Section by February 11, 2000.

(25) The plaintiffs contend that the court should expedite such further remedial proceedings for the defendants' contempt of consent decree I and related orders but that any such proceedings requiring individualized determinations should not be conducted before the resolution of all claims and proceedings required by article XX of consent decree I except insofar as the court conducts any such individualized remedial proceedings for the defendants' contempt and determines the relief thereon for the plaintiffs and the members of the plaintiff class at the same time as it hears and/or determines their remedies under article XX of consent decree I. The Adams intervenors contend that remedies for all persons injured by the defendants' non-compliance should be resolved promptly. The defendants reserve the right to contend that no further relief, beyond that granted pursuant to the remedies agreement, is necessary or appropriate and that the court should exercise its discretion to deny any such additional remedies.

(26) The plaintiffs do not consent to the Adams intervenors' claim that they should be awarded compensation or any other remedy for the defendants' contempt, and, by entering the remedies agreement and consenting to any order entered pursuant hereto, the plaintiffs do not waive their contentions that such relief should not be awarded, that the intervenors lack standing, and that this court lacks jurisdiction over the intervenors' contempt motion and request for relief. The Adams intervenors reserve their responsive contentions and further contend that the plaintiffs lack standing to oppose the intervenors' contempt motion and request for relief.

(27) The remedies agreement does not in any way resolve or foreclose any employee's individual rights and remedies, if any, under federal or state law or under consent decree I or related orders and injunctions entered in this case, nor does it foreclose any employee's right to pursue such rights and remedies independently of the contempt motions.

*Deadlines for Commencement of Sanctions*

(28) The dates, by provision in consent decree I, that the above coercive sanctions are to commence in the absence of a stipulation or court order determining that full compliance has been achieved are as follows:

*Article I:* May 31, 2000, except that the deadline for full implementation of licensing preparation program in ¶ 1(f) shall be August 15, 2001, and the deadline for a written plan for full compliance shall be April 1, 2000.

*Article II:* December 31, 2000, for SPD Project Classifications and October 1, 2001, for non-SPD Project Classifications.

*Article III:* August 30, 2000, except that the deadline for having the registers approved and ready for issuance of certificates of eligibles shall be December 31, 2000, for all non-entry level SPD Project Classifications, and October 1, 2001, for all non-SPD Project Classifications; and the deadline for full compliance with the provisions of article III, ¶ 2(a) shall be June 1, 2000.

*Article VI:* March 31, 2000, for permanent selection procedures.

*Article VII:* February 1, 2000, for permanent selection procedures, and for interim selection procedures only to the extent set forth in the parties' agree-

ment on interim selection procedures dated February 16, 1999.

*Article VIII:* May 15, 2000, for permanent selection procedures, and for interim selection procedures only to the extent set forth in the parties' agreement on interim selection procedures dated February 16, 1999, except that structured interviews for non-SPD Project Classifications are to be approved by the court and ready for use by December 31, 2000, and the deadline for the OCB interviews to be approved and used for SPD Project Classifications shall be April 15, 2000.

*Article IX:* May 31, 2000, for permanent selection procedures, and for interim selection procedures only to the extent set forth in the parties' agreement on interim selection procedures dated February 16, 1999 (Doc. No. 3639), except the deadline for the monitoring procedures shall be February 15, 2000.

*Article X:* April 1, 2000, except the deadline for ¶ 3(a) shall be May 15, 2000.

*Article XI:* April 15, 2000, including documentation in writing of all affirmative steps undertaken pursuant to ¶ 11 by that date.

*Article XIII:* June 30, 2000, except that notification to recruitment sources of discontinuance of EIT shall be repeated by June 1, 2000.

*Article XIV:* April 30, 2000, except that the deadline for full compliance with article XIV, ¶ 2 shall be February 29, 2000, and the deadline for a complete schedule for implementation of the rotation and training programs under ¶ 3(c) (but not the proportionality provision) for all applicable classifications shall be June 30, 2000. Once the schedule for compliance with the rotation and training programs under ¶ 3(c) has been completed, deadlines for coercive sanctions pursuant to Section IV of the remedies agreement shall be set by agreement of the parties or order of the court.

*Article XV:* February 29, 2000, except that the deadline for completing multigrade studies for all remaining non-SPD Project classifications, including those covered in Doc. No. 4015 shall be August 30, 2001. For future multigrade job studies, ¶ 3(d) shall be implemented, where applicable, within 60 days after the approval of the collapsed classification by the State Personnel Board.

*Article XVI:* May 15, 2000.

*Article XVII:* April 30, 2000.

*Article XVIII:* April 30, 2000.

*Article XIX:* March 1, 2000, except that the deadline for any revisions to the affirmative action plan shall be April 1, 2000.

*Implementation of Article XV, ¶ 3(d)*

(29) Solely for the purpose of fixing the minimum steps necessary to avoid the triggering of coercive sanctions by the deadline date of February 29, 2000, and not for the purpose of determining what constitutes full compliance with article XV, ¶ 3(d) of consent decree I, the parties agree that defendants will be relieved of paying such coercive fines for contempt of article XV, ¶ 3(d) by fully implementing the following steps by February 29, 2000:

(a) As to each employee in a consolidated classification (those currently in a consolidated classification and those who have been in a consolidated classification at any time since February 1998), the defendants are to determine what each employee's pay level would have been as of April 1996 had the new consolidated classification structure historically been in place instead of the former classification structure.

(b) The defendants are then to project each employee's pay level as if each employee had been in the new consolidated pay range from April 1996 to present.[21]

---

**21.** In the event an employee has not been in the consolidated classification since April 1996, the defendants are to apply this procedure from the date the employee entered the consolidated classification.

(c) The defendants are then to place each employee in the resulting pay step within the new consolidated pay range, if the employee's projected pay step is higher than the employee's current pay step. No employee's pay step shall be reduced as a result of the implementation of this provision.

(d) The defendants are to produce to the plaintiffs' and intervenors' counsel the calculations and determinations required above for each employee in a consolidated classification.

(30) These steps are adopted as a compromise in resolution of a disputed issue. By entering into the remedies agreement, the parties do not waive their respective contentions concerning the proper interpretation of article XV, ¶ 3(d). The plaintiffs and Adams intervenors reserve the right to contend that, if it is later determined that an employee should have been promoted at an earlier date, that employee's pay step must be recalculated hereunder. Nothing in the remedies agreement should be construed as an admission that the foregoing method of implementation of article XV, ¶ 3(d) is correct. The "years-of-service" issue remains pending in the court.

### Filling of Vacancies

(31) Pursuant to the provisions of article VII, ¶¶ 1 and 2, the Transportation Department is to take all reasonable steps necessary to ensure that, whenever a vacancy occurs, either (a) a request to fill the position is made within 30 days of the event causing the vacancy or (b) the State Personnel Department is notified within 30 days that the Transportation Department does not intend to fill the position, and the reason the position is not to be filled. Positions that are not to be filled must be abolished. Such notices will be produced to the parties, through counsel, as part of the monthly compliance report.

(32) Use of out-of-classification assignments is to be eliminated by March 30, 2000. Thereafter, duties or positions may be assigned on an out-of-classification ba-sis only when necessary on a temporary or emergency basis. A vacant position may be assigned out of classification only (a) when the position is to be filled and a request has been made to fill the position and (b) for the period of time required to fill the position with a properly classified employee. Requests to assign a vacant position on an out-of-classification basis must be made by the bureau or division in writing and are subject to the approval of the Transportation Department's Director. Such requests are to be produced to the parties on a monthly basis as part of the defendants' monthly compliance report.

(33) These provisions regarding the filling of vacancies do not control the manner in which positions are to be filled. The parties reserve their respective contentions concerning the method of filling vacant positions.

### Use of Consultants

(34) The plaintiffs and defendants agree as follows regarding the use of consultants:

(a) The Transportation Department currently uses consultant employees to perform construction engineering and inspection (CE & I) work. Consultants are contracted to perform such work pursuant to both project specific and "on-call" contracts.

(b) The plaintiffs and defendants wish to adopt a plan for The Transportation Department to cease using CE & I consultants on a regular basis. The Transportation Department's use of consultant employees to perform construction engineering and inspection work will be phased out over a period of 15 months. The 15–month period shall commence on the day that certificates of eligibles are issued by the State Personnel Department to fill currently existing Engineering Assistant vacancies, or Engineering Assistants to fill such vacancies are otherwise appointed, but not later than June 1, 2000. Beginning in January, 2000, the Transportation Department shall provide to the parties, on a month-

ly basis, a report of the CE & I consultant employees who are then currently performing services for the Transportation Department. The report shall include the nature of work being performed, the location of the work, and the identity and race of the consultant employee. The Transportation Department will use its best efforts to reduce the number of consultants as soon as it can practically do so.

(c) The Transportation Department may continue to enter into contracts when necessary to ensure the availability of CE & I consultants when the need for such consultants arises. Upon the completion of the 15–month phase-out period as set forth above, and for the remaining term of the consultants agreement, the Transportation Department will use CE & I consultant employees pursuant to such contracts only when the use of consultants is consistent with business necessity. For purposes of the consultants agreement, "business necessity" means the absence of available merit system employees or the impracticability of employing such merit system employees to timely and adequately perform the work to be performed by consultant employees.

(d) Whenever the Transportation Director deems it necessary to use CE & I consultant employees, he shall issue a notice, through counsel, to the parties. The notice shall set forth the identity of the consultant to be used, the nature of the work to be performed, the location of the work to be performed, and the expected duration of the use of such consultant employees. In addition, the notice shall set forth the reason that the Transportation Director deems it necessary to use CE & I consultants instead of merit system employees to perform the work. Upon determination of the identity of the consultant employees to be used, the plaintiffs shall receive a notice concerning the identity and race of the consultant employees.

(e) The agreement regarding the use of consultants expires on June 1, 2003.

(f) The terms of the consultant agreement apply only to the use of consultant employees to perform construction engineering and inspection duties. The use of consultants to perform other types of services, including without limitation, design, right of way, environmental and materials testing, and road and bridge construction services, is not restricted by the agreement.

(g) The plaintiffs reserve the right to bring a new motion to prohibit the use of consultants, for further relief under consent decree I, and to hold the defendants in contempt, if the Transportation Department fails to begin the agreed upon phase out, does not use its best efforts to reduce the number of consultants, or fails to act consistently with the consultants agreement, or if the plaintiffs conclude that the use of other types of consultant services warrant such action. The defendants enter into the consultants agreement solely as a compromise in order to resolve the plaintiffs' claims of contempt. The defendants do not in any way agree that the Transportation Department's use of consultants is improper or violative of any law, regulation, order, or injunction, including, without limitation, the terms of consent decree I, and reserve the right to oppose any motion or request for relief filed by the plaintiffs.·

(35) The Adams intervenors do not join in the agreement regarding the use of consultants, and they reserve any contention or objection that they may have with regard to the use of consultants.

*Final Provisions*

(36) The parties stipulate that time is of the essence and that there are to be no extensions of the deadlines for compliance, and no excuses or justifications recognized for any failure to meet such deadlines, unless otherwise agreed by the parties hereto or ordered by the court.

(37) The parties agree that the remedies agreement and any orders entered pursu-

ant thereto do not enlarge, diminish, or otherwise have any effect upon the standing of any party or the court's jurisdiction. The plaintiffs reserve any and all rights and contentions in opposition to the Adams intervenors' participation in and right to benefit from the remedies agreement, consent decree I, the defendants' contempt of such decree, and any other aspect of this case.

(38) The remedies agreement resolves the issues of the defendants' contempt to the extent set forth herein, subject to the provisions of the section above on non-coercive remedies and sanctions above. The agreement and the initial order entering the agreed upon finding of contempt and adopting the remedies set forth herein do not resolve or preclude the court from resolving any issues or claims other than the following two issues: (1) whether the defendants have been and are in contempt of consent decree I and the court's orders and injunctions related to its enforcement, and (2) what coercive remedies should be entered for such contempt. The remedies agreement does not affect, alter, or diminish the court's authority or jurisdiction to hear, rule upon, or address any other issues or matters in this case, or preclude the parties from seeking any such resolution or remedies from the court. The remedies agreement does not foreclose any party's right to file further motions raising other aspects of the defendants' noncompliance. The parties agree that they will not contend that the remedies agreement has any preclusive effect upon the status of any other issues or matters. The remedies agreement also does not alter or affect any other agreement between the parties including, but not limited to, the parties' agreement concerning interim appointment procedures and the parties' agreements concerning attorneys' fees.

(39) The parties waive any right to appeal or further contest the remedies agreement and the initial order entering the agreed upon finding of contempt and adopting the remedies set forth herein. This appeal waiver is limited to the forego-ing and does not apply to any subsequent order.

(40) The defendants and plaintiffs agree, without the consent of the Adams intervenors, that the defendants are to pay the fees and expenses of the plaintiffs' attorneys for all work related to the contempt proceedings, monitoring and enforcing the defendants' compliance with consent decree I and the remedies for contempt provided for herein, and whatever proceedings or work is necessary to obtain or effectuate such decree and remedies for contempt. The fees and expenses are to be paid according to the terms of the plaintiffs and defendants' agreement dated February 26, 1999; provided, however, that the defendants' obligation to pay the fees and expenses required by the agreement is not terminated or affected by the expiration, termination, or other ending of the agreement dated February 26, 1999, unless otherwise expressly agreed by the plaintiffs and the defendants.

(41) The defendants and the Adams intervenors agree, without the consent of the plaintiffs, that the defendants are to pay the fees and expenses of the Adams intervenors' attorneys for all work related to the contempt proceedings, monitoring and enforcing the defendants' compliance with consent decree I and the remedies for contempt provided for herein, and whatever proceedings or work is necessary to obtain or effectuate such decree and remedies for contempt. The fees and expenses are to be paid according to the terms of the defendants and the Adams intervenors' agreement dated February 20, 1996.

(42) The parties agree that, in the event that any provision or term of the remedies agreement, or the initial order finding the defendants in contempt and implementing the remedies set forth herein, should be determined to be or is otherwise rendered unenforceable, all other provisions and terms of the agreement are to remain unaffected to the extent permitted by law. If the deadline extensions agreed upon by

the plaintiffs and the defendants are not approved, the plaintiffs reserve the right to seek further relief pursuant to article XIX, ¶ 6 of consent decree I.

(43) The parties agree that the court retains jurisdiction over the remedies agreement and any order implementing the agreement until the issues regarding the defendants' contempt (including issues of compensatory relief) are resolved and the defendants have achieved full compliance with the consent decree provisions that are the subject of the agreement.

## II.

All parties are to be commended for resolving most of the civil-contempt issues among themselves. This cooperation reflects, the court hopes, a full commitment by the Transportation Department and the Personnel Department to full and certain compliance with all provisions of consent decree I by 2006, with the welcome result that this litigation can be brought to an end at that time and the full supervision of these two departments returned where it belongs, to the State of Alabama.

## III.

Based on the foregoing stipulations, agreements, evidence, and proceedings, the following is the ORDER, JUDGMENT, and DECREE of this court:

(1) Defendants Alabama Department of Transportation and State Personnel Department are held in civil contempt of consent decree I and the court's orders and injunctions enforcing such decree, as set forth in the parties' agreement to remedies for contempt, filed December 17, 1999 (Doc. no. 4247), until such time as they have affirmatively demonstrated that they have achieved full compliance with such decree, orders, and injunctions.

(2) The defendants must, by the dates set forth below, demonstrate full compliance with each article of consent decree I. The coercive sanctions set forth below (and in Section II of the parties' remedies agreement) shall begin automatically on the dates provided herein (and in Section V of the remedies agreement) in the absence of a stipulation of the parties or order of the court establishing the defendants' full compliance. As to each article for which one of the deadlines in paragraph three of this order has not been met, the following sanctions will apply:

(a) On the first day following the expiration of the deadline date, and on each subsequent day until full compliance is stipulated by the parties or found to have been achieved by the court, the defendants shall pay the sum of $ 500.

(b) Should the defendants' non-compliance continue for more than 30 days following the deadline date, beginning on the 31st day, and on each subsequent day until full compliance is stipulated by the parties or found to have been achieved by the court, the defendants shall pay the sum of $ 1,000.

(c) Should the defendants' non-compliance continue for more than 60 days following the deadline date, beginning on the 61st day, and on each subsequent day until full compliance is stipulated by the parties or found to have been achieved by the court, the defendants shall pay the sum of $ 1,500.

(d) Should the defendants' non-compliance continue for more than 90 days following the deadline date, the plaintiffs shall notify the court, and the court will set an emergency hearing to determine appropriate additional sanctions and remedies for continued non-compliance on an expedited basis.

(e) The sanctions set forth above shall apply, separately and severally, to each article of consent decree I. The foregoing sums shall be paid into the registry of the court on a weekly basis.

(3) The coercive sanctions in this paragraph shall commence by the following deadlines in the absence of a stipulation or court order determining that full compliance has been achieved:

| CONSENT DECREE PROVISION | DEADLINE FOR COMMENCEMENT OF SANCTIONS |
|---|---|
| Article I: | May 31, 2000, except that the deadline for full implementation of licensing preparation program in ¶ 1(f) shall be August 15, 2001, and the deadline for a written plan for full compliance shall be April 1, 2000. |
| Article II: | December 31, 2000, for SPD Project Classifications and October 1, 2001, for non-SPD Project Classifications. |
| Article III: | August 30, 2000, except that the deadline for having the registers approved and ready for issuance of certificates of eligibles shall be December 31, 2000, for all non-entry level SPD Project Classifications, and October 1, 2001, for all non-SPD Project Classifications; and the deadline for full compliance with the provisions of article III, ¶ 2(a) shall be June 1, 2000. |
| Article VI: | March 31, 2000, for permanent selection procedures. |
| Article VII: | February 1, 2000 for permanent selection procedures, and for interim selection procedures only to the extent set forth in the parties' agreement on interim selection procedures dated February 16, 1999. |
| Article VIII: | May 15, 2000, for permanent selection procedures, and for interim selection procedures only to the extent set forth in the parties' agreement on interim selection procedures dated February 16, 1999, except that structured interviews for non-SPD Project Classifications are to be approved by the court and ready for use by December 31, 2000, and the deadline for the OCB interviews to be approved and used for SPD Project Classifications shall be April 15, 2000. |
| Article IX: | May 31, 2000, for permanent selection procedures, and for interim selection procedures only to the extent set forth in the parties' agreement on interim selection procedures dated February 16, 1999 (Doc. No. 3639), except the deadline for the monitoring procedures shall be February 15, 2000. |
| Article X: | April 1, 2000, except the deadline for ¶ 3(a) shall be May 15, 2000. |
| Article XI: | April 15, 2000, including documentation in writing of all affirmative steps undertaken pursuant to ¶ 11 by that date. |
| Article XIII: | June 30, 2000, except that notification to recruitment sources of discontinuance of EIT shall be repeated by June 1, 2000. |
| Article XIV: | April 30, 2000, except that the deadline for full compliance with article XIV, ¶ 2 shall be February 29, 2000, and the deadline for a complete schedule for implementation of the rotation and training programs under ¶ 3(c) (but not the proportionality provision) for all applicable classifications shall be June 30, 2000. Once the schedule for compliance with the rotation and training programs under ¶ 3(c) has been completed, deadlines for coercive sanctions pursuant to Section IV of the remedies agreement shall be set by agreement of the parties or order of the court. |
| Article XV: | February 29, 2000, except that the deadline for completing multigrade studies for all remaining non-SPD Project classifications, including those covered in Doc. No. 4015 shall be August 30, 2001. For future multigrade job studies, ¶ 3(d) shall be implemented, where applicable, within 60 days after the approval of the collapsed classification by the State Personnel Board. |
| Article XVI: | May 15, 2000. |
| Article XVII: | April 30, 2000. |
| Article XVIII: | April 30, 2000. |
| Article XIX: | March 1, 2000, except that the deadline for any revisions to the affirmative action plan shall be April 1, 2000. |

(4) The remedies agreement of the parties is adopted in its entirety as the order of the court, with the exception of the agreement of the plaintiffs and the defendants for extension of consent decree I, and the parties are ENJOINED to comply with its terms in full.

(5) The term of consent decree I is extended as follows:

(a) The decree is extended in its entirety until December 31, 2004.

(b) The provisions of the decree affecting the recruitment and selection requirements of the decree—specifically article I, article III (¶¶ 2, 3, and 12), articles VI through X, article XI (¶¶ 11 and 21), article XIII (¶¶ 1(a) and (c), 2, 3(d), and 11), article XIV, and article XIX, (¶¶ 1–5, 6(a–d), and 7)—are extended until December 31, 2006, with the special affirmative action training of article XVI, ¶ 1, to be repeated in 2002 and 2004.

(c) Prior to expiration of the terms provided, the parties may seek further extension of any provision for which the defendants are not in full compliance.

(d) The plaintiffs retain the right to seek extension of the duration of all or part of the decree pursuant to the provisions of article XIX, ¶ 10 of the decree, and the defendants retain the right to oppose any such further extension.

(e) The plaintiffs retain the right to seek to restore the full amount of time that each provision of the decree was intended to operate after the initial compliance as a remedy for the defendants' contempt, and the defendants retain the

right to oppose any such further extension.

(6) As set forth in the parties' remedies agreement, this order and the parties' underlying agreement resolve the plaintiffs' motions for contempt and further relief, filed February 13, 1997 (Doc. nos. 1542 and 1543) and the Adams intervenors' motion for contempt enforcement through race neutral means, filed September 20, 1999 (Doc. no. 4167), with respect to the issues of the defendants' non-compliance and the coercive remedies and sanctions for such non-compliance, but do not resolve any other remedial issues regarding the defendants' contempt or the foregoing motions (including, without limitation, compensatory relief). The parties shall submit briefs on the issues necessary to resolve further remedial issues by February 11, 2000.

(7) The court retains jurisdiction over the remedies agreement and any order implementing the agreement until the issues regarding the defendants' contempt (including issues of compensatory relief) are resolved and the defendants have achieved full compliance with the consent decree provisions that are the subject of the agreement.